GENNARO REDDAVIDE and NICOLINA REDDAVIDE, his wife,
complainants,

*v.*

JOSEPH LASKOWITZ, IDA CHIRELSTEIN and BESSIE BELL,
defendants.

[Decided January 31st, 1927.]

On appeal from a decree of the court of chancery advised
by Vice-Chancellor Church, who delivered the following
opinion:

"This is a bill in the nature of an interpleader. The com-
plainants sought a mortgage on their property through one
Kleinman. The defendants Chirelstein and Bell, and also de-
fendant Laskowitz, all of whom had made loans through
Kleinman before, examined the property and agreed to make
the loan. On October 14th, 1924, complainants and the de-
fendants Chirelstein and Bell met in Kleinman's office. Com-
plainants executed a mortgage and at least one bond. Chirel-
stein and Bell thereupon gave complainants checks for the
agreed upon consideration, about $1,700. Complainants sup-
posed, as did Chirelstein and Bell, that the mortgage ran to
Chirelstein and Bell, Kleinman so reading the instruments
aloud to them. Neither complainants nor defendants can
read or write English. The bond and mortgage were, in fact,
payable to Kleinman, were acknowledged before one Stalford,
an attorney-at-law, and recorded the following day. Klein-
man gave defendants a bond stating it ran to them and that
he would send them the mortgage after it was recorded. The
husband denies that he signed this bond. As to this I think
he is mistaken, as a careful reading of the testimony con-
vinces me that he did, in fact, sign it. On October 15th
Kleinman executed an assignment of the mortgage to defend-
ant Laskowitz, receiving therefor $1,700 from one Lubetkin,

Laskowitz's son-in-law and attorney. This was recorded on October 20th. A month or so afterwards Chirelstein and Bell had the bond they held read to them and found it ran to Kleinman and not to themselves. They demanded an explanation, and Kleinman executed an assignment to them dated November 17th, 1924, and recorded January 19th, 1925. The mortgage is now in the possession of Laskowitz. It does not appear how he got it. Kleinman has absconded.

"Laskowitz contends that he is entitled to the money paid into court because his assignment was first recorded, and that he is not chargeable with notice of the other assignment. That might be if complainants had executed a mortgage to Kleinman, and Kleinman had paid them $1,700 and then assigned for value to Laskowitz, and the latter had recorded it, and it later appeared that Chirelstein and Bell theretofore, relying upon some authority in Kleinman, had taken an assignment from Kleinman but had not recorded it. The situation here is different. The defendants relied on the. representations of the complainants. Complainants say they thought they were executing, and meant to execute, a bond and mortgage to Chirelstein and Bell, and it is undisputed that Chirelstein and Bell then and there gave them checks for approximately $1,700. The witness Stalford says he read the contents of the papers to complainants before they signed, and informed them that the obligee was Kleinman. He says he read the papers *verbatim* and told them the due date. The papers have no due date. I think he is mistaken in saying he made the complainants understand the mortgage ran to Kleinman. They are illiterate and ignorant people, and the reading of long, legal documents *verbatim* would mean little to them. I am convinced they thought they were giving the mortgage to Chirelstein and Bell, and that Chirelstein and Bell were equally sure that they were paying $1,700 for a mortgage to themselves.

"The equity here is one existing against the mortgage in the hands of the original obligor, and Laskowitz is bound thereby.

" 'The purchaser for value of a chose in action is bound by the equities existing against it in the hands of the original

obligor.' *Putnam* v. *Clark, 29 N. J. Eq. 412; affirmed, 33 N. J. Eq. 338.*

"Moreover, I believe that Laskowitz had sufficient notice of the transaction between complainants and defendants Chirelstein and Bell to make it obligatory on him to investigate. Had he done so, Kleinman's intended fraud would have been frustrated. He was in Kleinman's office while this transaction was going on. A simple question would have disclosed the fact that it was not the intention of the parties to make Kleinman the mortgagee. Five days intervened between the date of the assignment to him and its record. He knew the mortgagors and had visited them at the property in question.

" 'It is always easy for an assignee before purchasing to inquire of the mortgagor, or of those who have succeeded to his rights, whether or not its validity will be disputed. If he chose to refrain from doing so, relying entirely upon the representations of the assignor, I think he has no right to ask the complainant [on this case the co-defendants] to bear the consequences of his own folly.' *Vredenburgh* v. *Burnet, 31 N. J. Eq. 229; affirmed, 34 N. J. Eq. 252.*

"I will advise a decree that the money in court be paid to Chirelstein and Bell."

*Mr. Samuel Woolman,* for the complainants.

*Mr. Benjamin W. Weinberg,* for the defendant Laskowitz.

*Mr. William K. Flanagan,* for the defendants Chirelstein and Bell.

PER CURIAM.

The decree will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Church, in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, BLACK, KATZENBACH, LLOYD, VAN BUSKIRK, MCGLENNON, KAYS, DEAR, JJ.   10.

*For reversal*—KALISCH, CAMPBELL, HETFIELD, JJ.   3.